UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**MARVIN JACKSON,**

   Plaintiff,

v.                                 No. 4:23–cv–0172–P

**WORLD WRESTLING ENTERTAINMENT, INC.,**

   Defendant.

### MEMORANDUM OPINION & ORDER COMPELLING ARBITRATION

Before the Court is a Motion to Compel Arbitration filed by Defendant World Wrestling Entertainment, Inc. ("WWE") and related briefing. ECF No. 6. For the reasons set forth below, the Motion is **GRANTED**.

### BACKGROUND

WWE is an entertainment company engaged in the production of various live and televised events involving professional wrestling. On April 3, 2022, WWE hosted WrestleMania 38 at AT&T Stadium in Arlington, Texas. Plaintiff Marvin Jackson attended the event and was seated next to the performance stage. When the performance began, Jackson alleges he suffered hearing loss from the sound of pyrotechnics at the event.

Using the website Seatgeek.com, Jackson's electronic mobile ticket for WrestleMania was purchased by Jackson's nephew, Ashton Mott, as a surprise birthday gift for Jackson. ECF No. 14, Ex. A. Mott used his cellphone to purchase the ticket and he stored the ticket on his phone until the event. *Id.*, Ex. A, A–1. Using his phone, Mott presented his and Jackson's tickets at AT&T Stadium for admission to the event

for himself and Jackson. *Id.* There is no evidence that Jackson either viewed, or at any time had physical possession of, his ticket. *Id.*, Ex. B.

Seatgeek is AT&T Stadium's primary ticketing partner. ECF No. 7, App. 001. The Seatgeek.com website requires purchasers to accept and acknowledge at several points during the ticket purchasing and downloading process that certain disputes must be settled through arbitration.

*First*, before a purchaser could buy tickets and complete the transaction to attend WrestleMania, the purchaser was required to check two boxes on the Seatgeek website. *Id.*, App. 001–002. One box provides: "By checking this box, you are agreeing to AT&T Stadium's terms and conditions" and the other provides "By checking this box, you are agreeing to the AT&T Stadium COVID WAIVER." *Id.*, App. 002. The phrases "AT&T Stadium's terms and conditions" and "AT&T Stadium COVID WAIVER" were underlined and hyperlinked to the full policies. *Id.* In addition, the word "Required" was printed in red underneath both of the boxes for "AT&T Stadium's terms and conditions" and "AT&T Stadium COVID WAIVER." *Id.* A purchaser could not complete the transaction and purchase the electronic tickets unless both boxes were checked and "AT&T Stadium's terms and conditions" and the "AT&T Stadium COVID WAIVER" were agreed to. *Id.*

*Second*, the hyperlink for the "AT&T Stadium COVID WAIVER" accesses a bolded "**Arbitration and Release & Waiver of Liability Agreement**." ECF No. 7, App. 002. The Arbitration and Release & Waiver Agreement (the "Arbitration Agreement") provides:

2

> **5. ARBITRATION AGREEMENT.** Holder hereby agrees, on behalf of itself and Related Persons, that: (a) any Claim asserted by Holder against any of the Released Parties shall be resolved by mandatory, confidential, final, and binding arbitration to Judicial Arbitration and Mediation Services, Inc. ("**JAMS**"); (b) this Section 5 is governed by the Federal Arbitration Act ("**FAA**"); (c) the FAA is applicable because the Released Parties are engaged in transaction involving interstate commerce; (d) the arbitration shall proceed before a single arbitrator; (e) the arbitration shall be conducted in accordance with the JAMS Comprehensive Arbitration Rules and Procedures; (f) any and all issues relating or pertaining to arbitration or this arbitration clause, including but not limited to the threshold question of arbitrability or the enforceability or validity of this arbitration clause, shall be delegated to the arbitrator selected pursuant to this provision; (g) the arbitrator shall have the power to award any remedies, including attorneys' fees and costs, available under applicable law; (h) judgement upon the award rendered by the arbitrator may be entered in any court having jurisdiction; (i) the award may be vacated or modified only on the grounds specified in the FAA or other applicable law; and (j) any arbitration conducted pursuant to this Agreement shall take place in Collin County, Texas.

*Id.*, App. 011–012.

The Arbitration Agreement defines "Released Parties" as: (i) "the direct and indirect owners, lessees and sublessees, licensees and event hosts of venue"; (ii) "all third parties performing services at the venue"; and (iii) "any parents, subsidiaries, affiliated and related companies and officers, directors, owners, members, managers, partners, employers, employees, agents, contractors, sub–contractors, insurers, representatives, successors and/or assigns of each of the foregoing entities and persons, whether past, present or future." ECF No. 7, App. 011. The Arbitration Agreement further provides that "[t]he person seeking entry pursuant to the entry ticket(s) issued on a per transaction basis, and any accompanying minors ('Holder'), agrees to be bound by the terms and conditions of this Agreement." *Id.*, App. 008–009.

*Third*, after purchasing an electronic mobile ticket through SeatGeek.com, the purchaser receives a confirmation email stating: "By using your mobile tickets for entry, you accept the Ticket Terms https://www.dallascowboys.com/tickets/terms and agree to the

3

[Arbitration and Release & Waiver https://www.dallascowboys.com/stadium/arbitration–release](https://www.dallascowboys.com/stadium/arbitration–release)." ECF No. 7, App. 002–003. The Arbitration Agreement in the confirmation email is the same agreement that must be accepted prior to purchasing tickets from the Seatgeek website. *Id.*

*Fourth*, to access the electronic tickets for entry to WrestleMania, a person is required to download the SeatGeek app or the Dallas Cowboys app. ECF No. 7, App. 003. The SeatGeek app or the Dallas Cowboys app must be used to access electronic mobile tickets for entry to the event, regardless of whether the ticket for the event was purchased through SeatGeek.com or was transferred to the attendee either by another purchaser or from another vendor. *Id.* Further, before a person is able to accept a transferred electronic mobile ticket for entry to WrestleMania through the SeatGeek app or the Dallas Cowboys app, the person is required to check a box that stated, "By checking this box, you are agreeing to AT&T Stadium's terms and conditions," including the Arbitration Agreement. *Id.*

*Sixth*, when a person accesses the electronic mobile tickets for entry to an event at AT&T Stadium through the SeatGeek app or the Dallas Cowboys app, the person receives a "**Know Before You Go**" notification again identifying and hyperlinking the Arbitration Agreement. ECF No. 7, App. 003.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") requires district courts to direct parties to arbitrate issues covered by a valid arbitration agreement. 9 U.S.C. §§ 3, 4; *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). In determining whether to compel arbitration, a court must decide (1) whether a valid arbitration agreement between the parties exists and, if so, (2) whether the dispute falls within the arbitration agreement's scope. *Edwards v. Doordash, Inc.*, 888 F.3d 738, 743 (5th Cir. 2018) (citing *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013)); *see also Dow v. Keller Williams Realty, Inc.*, No. 4:21–CV–1209–P, 2022 WL 4009047, at *3 (N.D. Tex. Sept. 2, 2022) (Pittman, J.).

In this first step of the analysis, the party moving for arbitration has the burden to show that the arbitration agreement is valid. *Trujillo v. Volt Mgmt. Corp.*, 846 F. App'x 233, 236 (5th Cir. 2021). After the movant produces "competent evidence showing the formation of an agreement to arbitrate ..., [the] party resisting arbitration [must] produce some contrary evidence to put the matter 'in issue.'" *Gallagher v. Vokey*, 860 F. App'x 354, 357–58 (5th Cir. 2021). "When a court decides whether an arbitration agreement exists, it necessarily decides its enforceability between parties." *Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 398 (5th Cir. 2022). Thus, when a signatory movant seeks to bind a non-signatory to the arbitration agreement, as in this case, this first step is more involved. *Id.* at 401. The court must then ask whether "a written arbitration provision exists that is made enforceable against (or for the benefit of) a third party under state contract law." *Id.* (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009); *Crawford Pro. Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 257 (5th Cir. 2014)).

If the movant satisfies the first step, courts proceed to the second step: determining "whether the current dispute falls within the scope of a valid agreement." *Edwards*, 888 F.3d at 743. The party resisting arbitration bears the burden of proving that a dispute is outside the arbitration clause's scope. *Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F.3d 295, 303 (5th Cir. 2021) (citation omitted).

## ANALYSIS

The issue before the Court is simple and straightforward. There is no dispute that WWE is one of the "Released Parties" under the terms of Arbitration Agreement. It also undisputed that Mott, not Plaintiff Jackson, purchased the WrestleMania electronic mobile ticket and it was Mott that accepted the multiple acknowledgments of the Arbitration Agreement through Seatgeek.com and/or the Seatgeek app or the Dallas Cowboys App. Further, is undisputed that Mott stored the tickets on his cellphone and presented the tickets at upon entering AT&T Stadium to attend WrestleMania with Jackson. Moreover, there is no dispute over whether Jackson ever held or accessed his ticket or reviewed the Arbitration Agreement. The Court presumes he did not.

5

Finally, and most importantly, there is no real dispute that the Arbitration Agreement is valid or that the alleged injuries suffered by Jackson at WrestleMania would be subject to arbitration if Jackson is found to be covered by the Arbitration Agreement.

The only real question for the Court is whether Mott's consent to the Arbitration Agreement can bind Jackson, even though Jackson had no notice of the Arbitration Agreement, but he used the ticket purchased by Mott to attend WrestleMania. Based on long-standing and highly analogous law, the answer is a resounding "Yes!" A lengthy analysis is not warranted to grant WWE's motion to compel arbitration, but the Court will provide a brief overview of the caselaw supporting its holding.

It is true that in most contexts, arbitration agreements rarely bind non-signatories, *IMA, Inc. v. Columbia Hosp. Med. City*, 1 F.4th 385, 391 (5th Cir. 2021.). But it is also true that "[t]he law does not look too kindly on parties who [take advantage of but then] seek to avoid the terms of the [ ] ticket contract." *Schaff v. Sun Line Cruises, Inc.*, 999 F. Supp. 924, 926 (S.D. Tex. 1998). Indeed, it is quite well established that "[i]t is not necessary that [a ticket user] have actual knowledge of such conditions or limitations or that [their] attention be called to them. Moreover, it is well established that [a ticket user] has accepted a ticket and received notice of its contents even though a [ ] companion receives and holds the [user's] ticket*." Id.* at 926; *see Lunday v. Carnival Corp*, 431 F. Supp. 2d 691, 693–94 (S.D. Tex. 2004) (same).

The plethora of decisions involving cruise ship tickets containing binding arbitration provisions where an injured passenger seeks to avoid arbitration by arguing that another passenger purchased or held the ticket are instructive here. In those cases, the Fifth Circuit has held that "provisions that appear on the ticket as part of the contract of passage embodied in the ticket are binding regardless of whether they were read by the passenger, provided they are not unlawful in content." *Miller v. Lykes Bros. S.S. Co.*, 467 F.2d 464, 466 (5th Cir. 1972) (quoting *Baron v. Compagnie Generale Transatlantique*, 108 F.2d 21, 23 (2d Cir. 1939)). This basic principle has been uniformly applied by every court to address this issue for several decades. *See, e.g., Marek v. Marpan Two, Inc.*, 817 F.2d 242, 247 (3d Cir. 1987) (holding that plaintiff had notice,

although plaintiff and her companion traveled together and shared the same ticket envelope); *Foster v. Cunard*, 121 F.2d 12, 13 (2d Cir. 1941) (holding that plaintiff accepted ticket and had notice, although plaintiff's brother procured and held the tickets); *Roberts v. Carnival Corp.*, 2022 WL 834905, at *8 (S.D. Fla. Mar. 21, 2022) (holding that plaintiff accepted ticket and had notice, although plaintiff's sister booked tickets for the entire group traveling); *Palmer v. Norwegian Cruise Line & Norwegian Spirit*, 741 F. Supp. 2d 405, 411 (E.D.N.Y. 2010) ("[N]umerous cases from both the Second Circuit and various district courts have held that a passenger's ticket may constitute a contract with a carrier even when the purchaser neither purchases nor sees the ticket."); *Barkin v. Norwegian Caribbean Lines*, No. 86–0343, 1987 WL 766923, at *1 (D. Mass. June 25, 1987) (granting summary judgment based on ticket contract limitation where plaintiff's travel companion purchased ticket for plaintiff and plaintiff failed to read ticket contract); *Ciliberto v. Carnival Cruise Lines, Inc.*, 1986 WL 2560, at *3 (E.D. Pa. Feb. 25, 1986) (holding that the plaintiff had notice although a co–worker not well known to plaintiff procured and held the ticket); *DeCarlo v. Italian Line*, 416 F. Supp. 1136, 1137 (S.D.N.Y. 1976) (holding that the plaintiff had notice although plaintiff's friend arranged for and held the cruise contract ticket, and plaintiff never saw the ticket); *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991) (forum selection clause on pre-printed ticket was enforceable notwithstanding absence of opportunity for negotiation).

Instructive outside of the cruise ship context is *Hofer v. Gap, Inc.*, 516 F. Supp. 2d 161, 166 (D. Mass. 2007) involving a plaintiff that received injuries while traveling with friend that had booked their trip through Expedia.com. Because the plaintiff's friend, and not the plaintiff, purchased the plaintiff's ticket on-line, the plaintiff argued she was not subject to a liability disclaimer on Expedia's website. *Id.* at 175–76. In language directly applicable here, the district court found that the plaintiff's argument was "clearly without merit" and held

> [P]laintiff obviously authorized LaRoche to go online and purchase airline tickets and hotel reservations. Nothing in that arrangement is remarkable in the slightest respect;

7

> family members, friends, and work colleagues routinely book travel plans for others, and it would be extraordinarily cumbersome to require that each traveler book his or her own ticket. Each such arrangement is necessarily an agency relationship: the person booking the tickets is acting as an agent on behalf of the other members of the traveling party. Implicit in that agency relationship is the power to bind the principal as to matters within the scope of the relationship, including the acceptance of the terms of a disclaimer.

*Id.* at 175 (citations omitted); *see also Nicosia v. Amazon.com, Inc.,* 384 F. Supp. 3d 254, 258, 279 (E.D.N.Y. 2019), *aff'd* 815 F. App'x 612, 613–14 (2d Cir. 2020) (granting motion to compel arbitration where husband used his wifie's online account that was subject to an arbitration clause to purchase an item husband alleged caused him injury); *Adsit Co., Inc. v. Gustin*, 874 N.E.2d 1018, 1023–24 (Ind. App. 2007) (where defendant provided her credit card to her mother–in–law to complete an online purchase "on her behalf," the defendant was bound by the online agreement's forum selection clause).

Adopting the consistent reasoning of these decisions, the Court holds that Mott acted as Jackson's agent in acquiring the ticket to WrestleMania, and by attending the event using the ticket, Jackson is legally chargeable with notice of the Arbitration Agreement. Holding otherwise would permit those who use tickets purchased by others to thwart a clearly provided for, accepted, and acknowledged Arbitration Agreement. Just as a cruise passenger "who omits to read takes the risk of the omission," *Murray v. Cunard S.S. Co.,* 235 N.Y. 162, 139 N.E. 226 (1923), an attendee of an event who takes advantage of the ticket but chooses to forego the opportunity to review the terms of the ticket by leaving it in the hands of his agent is charged with knowledge of its terms. *See Ward v. CrossSound Ferry*, 273 F.3d 520, 524 (2d Cir. 2001) (husband was wife's agent for purpose of ticket purchase); *Kientsler v. Sun Line Greece Shipping Co.*, Inc., 779 F. Supp. 342, 346 (S.D.N.Y. 1991) (purchaser of ticket acts as agent of passenger–plaintiff).

## CONCLUSION

Because the Court finds that Jackson is subject to the Arbitration Agreement and there is no real dispute by Jackson's injury falls within the Arbitration Agreement's scope, WWE's motion to compel arbitration is **GRANTED**.[1] This action is **DISMISSED WITH PREJUDICE** in favor of arbitral proceedings to be instituted by Jackson against WWE, as provided for in their Arbitration Agreement. *See Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir. 1992) (upholding dismissal with prejudice of claims when all the party's claims were subject to arbitration). A final judgment will issue by separate order.

**SO ORDERED** on this **9th day of May 2023.**

MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE

---

[1] By granting WWE's motion to compel arbitration, the Court necessarily **DENIES** Jackson's request for oral argument as **MOOT**. ECF No. 19.